```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
ACMETEL USA LLC,                                                 :
                                                                 :
                            Plaintiff,                           :
                                                                 :          23-cv-11027 (LJL)
              -v-                                                :
                                                                 :          OPINION AND ORDER
PTGi INTERNATIONAL CARRIER SERVICES, INC.,                       :
                                                                 :
                            Defendant.                           :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/10/2024

LEWIS J. LIMAN, United States District Judge:

Proposed Intervenors AI Amped I, LLC and AI Amped II, LLC (together, "Arena") move, pursuant to Federal Rules of Civil Procedure 24 and 69 and New York Civil Practice Law and Rules sections 2304 and 5240, to intervene in this action, for an order quashing or vacating the Information Subpoena with Restraining Notice and Subpoena Duces Tecum issued by Judgment Creditor Acmetel USA LLC ("Acmetel"), and for an order directing the release of funds in the PTGi accounts, and for attorney's fees. Dkt. No. 36. Acmetel opposes the motion and cross-moves for an order requiring Proposed Intervenors to "correct" their Rule 7.1(a) Disclosure Statement. Dkt. No. 45.

For the following reasons, Proposed Intervenors' motion is granted in part and denied in part, and Acmetel's cross-motion is denied.

## BACKGROUND

**I.    The Underlying Action**

The instant motions arise out of the efforts of Acmetel to be paid on invoices it issued to defendant PTGi International Carrier Services, Inc. ("PTGi").[1] Acmetel is an Illinois limited liability company that provides telecommunications services, including wholesale voice, short messaging service, firewalls, and fraud management systems. Dkt. No. 21 ¶ 1. PTGi is a Delaware corporation with its last known business address in New York, New York. *Id.* ¶ 2. PTGi provides, among other services, international and domestic voice routing to telecom operators, mobile operators, voice-over internet provider carriers, wholesale carriers, prepaid operators, and value-added resellers. *Id.* ¶ 3.

On February 1, 2023, Acmetel and PTGi entered an agreement entitled Addendum for Open Pipe Deal (the "Agreement"). *Id.* ¶ 6. Under the Agreement, PTGi agreed to pay Acmetel $3,374,000 a month for the termination of 96,000,000 minutes of monthly Yemen traffic (i.e., international voice calls terminating in Yemen) originating from specified telephone number ranges. *Id.* ¶ 7. Acmetel has not been paid for two invoices that it issued under the Agreement: (1) an invoice issued on or about November 2, 2023, in the amount of $3,374,000 for terminating Yemen-bound traffic received from PTGi during October 2023, *id.* ¶¶ 12-15; and (2) an invoice issued on or about December 2, 2023, in the same amount, for terminating Yemen-bound traffic received from PTGi during November 2023, *id.* ¶¶ 16-19.

Plaintiff filed a complaint on December 20, 2023, claiming breach of contract, account stated, and unjust enrichment, and seeking damages in the amount of the unpaid invoices plus

---

[1] The Court assumes the truth of the well-pleaded allegations of the Amended Complaint.

contractual interest and post-judgment interest, costs, and reasonable attorney's fees. Dkt. No. 1. It filed its Amended Complaint on February 26, 2024. Dkt. No. 21.[2]

On January 22, 2024, the Court issued a Case Management Plan and Scheduling Order, permitting the parties to serve discovery requests and providing for all discovery to be completed by April 17, 2024. Dkt. No. 15. On April 16, 2024, Acmetel moved to compel PTGi to produce a noticed witness pursuant to Federal Rule of Civil Procedure 30(b)(6) or for sanctions in the form of an order striking PTGi's answer. Dkt. No. 28. PTGi opposed the request for sanctions, asserted that it was "operating under difficult circumstances" because its ultimate parent company, Charge Enterprises, Inc. ("Charge") was attempting to confirm a Chapter 11 plan in its bankruptcy proceeding, and represented that it was seeking "a full resolution of this matter promptly." Dkt. No. 30 at 1.[3] The Court scheduled a discovery conference for April 23, 2024, Dkt. No. 31, but on that day the parties wrote the Court requesting that the conference be cancelled and attaching a proposed Stipulated Judgment in the amount of $6,727,272.98 with interest to accrue at the legal rate of judgment. Dkt. No. 32. The Court entered the judgment the same day. Dkt. No. 33. On May 24, 2024, the Court issued an Abstract of Judgment in favor of Acmetel and against PTGi in the amount of $6,727,272.98. Dkt. No. 35.

The judgment was transcribed in the New York County Clerk's Office on May 28, 2024. Dkt. No. 37-1. On June 7, 2024, Acmetel served the Information Subpoena with Restraining Notice and Subpoena Duces Tecum on PNC Bank, NA. Dkt. No. 37 ¶ 12; Dkt. No. 37-1. The Restraining Notice provides notice to PNC Bank that it is forbidden to make or permit any sale,

---

[2] The Amended Complaint contained allegations supporting the Court's diversity jurisdiction. Dkt. No. 21 ¶¶ 1–4.
[3] Charge filed a petition under Chapter 11 of the Bankruptcy Code on March 7, 2024, in the United States Bankruptcy Court for the District of Delaware. Dkt. No. 37 ¶ 8. It completed the bankruptcy process on May 3, 2024. *Id.*

3

assignment or transfer of, or any interference with PTGi's property that is in its custody or possession except upon direction of the sheriff or marshal or pursuant to court order until the Judgment is satisfied or vacated, except as provided in C.P.L.R. 5222(b).  Dkt. No. 37-1.  The Information Subpoena contains a number of questions directed to discovering PTGi's assets.  *Id.*

On June 12, 2024, PNC Bank debited the full balance of all of the PTGi accounts, totaling approximately $964,127.45, and is holding those funds in a deposit box.  Dkt. No. 37 ¶ 13.

## II.     The Motion to Intervene and Quash

On July 30, 2024, Proposed Intervenors filed this motion to intervene and to quash, along with a declaration in support.  Dkt. Nos. 36, 37.  Proposed Intervenors are parties to two agreements with Charge and certain of its subsidiaries including PTGi: (1) a security agreement dated December 17, 2021, pursuant to which PTGi and the other subsidiaries granted Proposed Intervenors a security interest in their assets to secure the prompt payment, performance and discharge in full of the obligations of Charge under certain convertible and non-convertible notes issued by Charge (the "Notes"); and (2) a guaranty agreement dated as of December 17, 2021 pursuant to which PTGi guaranteed the prompt payment of all outstanding amounts owed to Proposed Intervenors under the Notes.  Dkt. No. 37 ¶¶ 3–4.

Proposed Intervenors hold valid, perfected security interests in all of PTGI's assets as evidenced by UCC-1 Financing Statements and Deposit Account Control Agreements ("DACAs"), all of which predate the Stipulated Judgment.  *Id.* ¶ 5; Dkt. No. 37-2.  Proposed Intervenors assert that Charge defaulted on its obligations under the Notes, and that accordingly, they have a valid claim against Charge and PTGi as well as the other guarantors for more than $220 million.  Dkt. No. 37 ¶ 6.

Proposed Intervenors seek the release of the funds being held by PNC Bank pursuant to the Restraining Notice.  On June 19, 2024, they sent a letter to PNC reminding PNC of Proposed Intervenors' first-priority security interest and demanding prompt return of the funds.  *Id.* ¶ 14; Dkt. No. 37-3.  PNC has indicated, however, that it will not release and return the funds to the PTGi accounts unless Acmetel voluntarily withdraws the Restraining Notice or absent order of the Court.  *Id.* ¶ 16.  Acmetel has not agreed.

## DISCUSSION

Proposed Intervenors argue that the Court has and should exercise the authority to modify the Information Subpoena with Restraining Notice and Subpoena Duces Tecum pursuant to C.P.L.R. 5240.  Dkt. No. 48 at 1–2.  C.P.L.R. 5240 provides that: "The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."  N.Y. C.P.L.R. 5240.  The provision "grants the court substantial authority to order equitable relief."  *Cruz v. TD Bank, N.A.*, 2 N.E.3d 221, 229 (N.Y. 2013). "CPLR 5240 grants the courts broad discretionary power to control and regulate the enforcement of a money judgment under article 52 to prevent 'unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.'"  *Guardian Loan Co. v. Early*, 392 N.E.2d 1240, 1242–43 (N.Y. 1979) (quoting Third Preliminary Report of the Advisory Comm. on Practice and Procedure, 1959, at 314); *Keawsri v. Ramen-Ya Inc.,* 2022 WL 17813236, at *4 (S.D.N.Y. Dec. 19, 2022), *reconsideration denied*, 2023 WL 374012 (S.D.N.Y. Jan. 24, 2023); *KLS Diversified Master Fund, L.P. v. McDevitt*, 2022 WL 220058, at *5 (S.D.N.Y. Jan. 25, 2022).  Proposed Intervenors argue that they are entitled to such relief because the Restraining Notice restrains property to which they enjoy priority and which PNC

Bank could not transfer or assign to satisfy the judgment in this case. Dkt. No. 48 at 2–3; *see* Dkt. No. 37 at ¶¶ 19–25.

Acmetel argues that the Court lacks subject matter jurisdiction over this matter and, relatedly, that Proposed Intervenors have not filed a Rule 7.1 Statement that establishes the existence of diversity jurisdiction. Dkt. No. 47 at 2–4, 6–7. It argues that the relief Proposed Intervenors seek can be granted only in a special proceeding under C.P.L.R. 5239. *Id.* at 4–6. It also argues that Proposed Intervenors do not meet the standards for intervention under Federal Rule of Civil Procedure 24. *Id.* at 7–10. Finally, it argues that disputed issues of fact exist as to Proposed Intervenors' alleged priority sufficient to defeat the motion for relief from the Restraining Notice. *Id.* at 10–11. None of Acmetel's arguments has merit, and Proposed Intervenors are entitled to an order vacating the Restraining Notice.

I.   **Subject Matter Jurisdiction**

Acmetel argues that Proposed Intervenors have failed to establish an independent basis for federal jurisdiction. Dkt. No. 47 at 2–4. Acmetel is a limited liability company whose only member is a resident of Illinois, Dkt, No. 10, and thus is a citizen of the State of Illinois for purposes of diversity jurisdiction. *See Carter v. Healthport Tech, LLC*, 822 F.3d 47, 60 (2d Cir. 2016); Dkt. No. 11. PTGi is a Delaware corporation with its principal place of business in New York. Dkt. No. 21 ¶ 2. Proposed Intervenors are limited liability companies who have filed a Rule 7.1 Disclosure Statement indicating that they have no parents and are managed by Arena Investors, LP, a global investment firm with its principal place of business in New York, but have not listed their members. Dkt. No. 38. Hence, Acmetel argues that the Local Rule 7.1 Statement is defective and, because Proposed Intervenors fail to show complete diversity between themselves and Acmetel, the Court has no subject matter jurisdiction to resolve this dispute. Dkt. No. 47 at 2–4, 6–7. Acmetel's argument is based on a faulty predicate. Proposed

6

Intervenors need not show complete diversity for the Court to have subject matter jurisdiction to quash the Information Subpoena with Restraining Notice and Subpoena Duces Tecum.

The Court "has ancillary jurisdiction over subsequent proceedings necessary to 'vindicate its authority, and effectuate its decrees.'" *Dulce v. Dulce*, 233 F.3d 143, 146 (2d Cir. 2000) (quoting *Peacock v. Thomas,* 516 U.S. 349, 354 (1996)). "This includes proceedings to enforce the judgment." *Id.*; *see Jones v. Milk River Café, LLC*, 2022 WL 3300027, at *3 (E.D.N.Y. Aug. 11, 2022); *VFS Fin., Inc. v. Elias-Savion-Fox LLC*, 73 F. Supp. 3d 329, 335 (S.D.N.Y. 2014). The Court therefore has jurisdiction to entertain the motion of Proposed Intervenors.

In *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 471 (2d Cir. 2018), the Second Circuit addressed whether a state court would have jurisdiction to quash a restraining notice issued under C.P.L.R. 5222(b) to enforce a federal judgment.  The court held that only the federal court had such authority.  *Id.*  The restraining notice forbids the garnishee upon whom it is served from selling, assigning, transferring or interfering with the property in which the judgment creditor has an interest, with limited exceptions, "except upon the direction of the sheriff or pursuant to an order of the court."  N.Y. C.P.L.R. 5222(b).  The function of C.P.L.R. 5222 is "to secure funds for later transfer to the judgment creditor through a sheriff's execution or turnover proceeding." *Cruz*, 2 N.E.3d at 223.  The restraining notice acts "as a kind of freeze on such of the debtor's assets as the served person may have, during which the judgment creditor can use other devices, such as an execution, to try to have the property turned over. It buys time, in other words." Siegel, New York Practice § 508 (6th ed. 2024).  "[A] judgment creditor pursuing property in the possession of someone *other* than the judgment debtor must commence an action against the person in possession."  *All. Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 21 (2d Cir. 1999).  The court in *CSX*

7

*Transportation* held that "the plain and unambiguous meaning of C.P.L.R. § 5222(b) is that 'the' court refers to the court out of which the restraining notice issued." 879 F.3d at 471. Where the judgment has been rendered by the federal court in the Southern District of New York, then only that court can modify or dissolve the restraining notice. "[P]ermitting a second court to dissolve a restraining notice issued out of the first court would injure the rights of creditors and threaten the first court's injunctive power." *Id.*

It follows that Proposed Intervenors need establish no separate basis for subject matter jurisdiction. The Court originally acquired jurisdiction because Acmetel and PTGi are citizens of different states and the amount in controversy exceeded $75,000. Diversity of citizenship permitted the Court to enter judgment. The Court now has ancillary jurisdiction to protect and vindicate its judgment. *See Dulce*, 233 F.3d at 146; *Peacock*, 516 U.S. at 356; *Zeiler v. Deitsch*, 500 F.3d 157, 170 (2d Cir. 2007). This Court is the only court with authority to relieve Proposed Intervenors from the effect of the restraining notice.

Plaintiff's related argument that Proposed Intervenors' disclosure statement pursuant to Federal Rule of Civil Procedure 7.1(a) is defective is similarly flawed. Rule 7.1(a)(2) provides that a party or intervenor in an action where jurisdiction is based on diversity under 28 U.S.C. § 1332(a) must, unless the court orders otherwise, file a disclosure statement that names and identifies the citizenship of "every individual or entity whose citizen is attributed to that party or intervenor." Fed. R. Civ. P. 7.1(a)(2). This Rule is "designed to facilitate an early and accurate determination of jurisdiction," and "recognizes that the court may limit the disclosure in appropriate circumstances," such as "when a party reveals citizenship that defeats diversity jurisdiction." Fed. R. Civ. P. 7.1(a)(2) advisory committee notes to 2022 amendments. As this comment makes clear, the purpose of the rule is to facilitate the determination of whether a court

has diversity jurisdiction. As the Court's ability to adjudicate Proposed Intervenors' motion is not grounded on diversity jurisdiction, the citizenship of Intervenors' members is not relevant. Acmetel's cross motion for an order requiring Arena to correct its disclosure statement is therefore denied.

**II.     The Motion to Quash**

Under Federal Rule of Civil Procedure 69, state law generally supplies the procedures for enforcement of the judgment. The Rule provides: "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located . . . ." Fed. R. Civ P. 69(a)(1).

In New York, article 52 of the Civil Practice Law and Rules "regulates the methods of enforcement and satisfaction of money judgments." *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 183 N.E.3d 1185, 1189 (N.Y. 2021). The first section of this article, C.P.L.R. 5201, "describes the assets that New York law has made subject to enforcement, and thus available to judgment creditors." *All. Bond Fund*, 190 F.3d at 20. These include "any debt, which is past due or which is yet to become due" and "any property which could be assigned or transferred," subject to certain exemptions. *Id.* (quoting N.Y. C.P.L.R. 5201). Subsequent provisions of article 52 provide methods of securing the assets, such as a restraining notice, C.P.L.R. 5222, and of obtaining the assets, such as a turnover order, C.P.L.R. 5225, an execution, C.P.L.R. 5230, and a levy, C.P.L.R. 5232. "'[G]eneral provisions that permit "any interested person"—including a judgment debtor—to secure remedies for wrongs arising under the statutory scheme' are set out in CPLR 5239 and 5240." *Plymouth*, 183 N.E.3d at 1190 (quoting *Cruz*, 2 N.E.3d at 265). C.P.L.R. 5239 allows "any interested person" to commence a special proceeding against a judgment creditor to "determine rights in the property or debt" that may be used to satisfy a judgment. C.P.L.R. 5239. C.P.L.R. 5240 states that "[t]he court may at

9

any time, on its own initiative or the motion of any interested person . . . make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." C.P.L.R. 5240.

The Information Subpoena with Restraining Notice and Subpoena Duces Tecum in this case was served pursuant to C.P.L.R. 5222. That provision authorizes the clerk of the court or the judgment creditor "as officer of the court" to serve upon any person in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor has an interest and provides that, upon service of such a notice, the person receiving it is forbidden to make or suffer any sale, assignment or transfer of, and any interference with such property except, with limited exceptions, upon the direction of the sheriff or pursuant to court order. C.P.L.R. 5222(b); *see CSX Transportation*, 879 F.3d at 470. "[S]ervice of a CPLR 5222 restraining notice confers no priority upon the judgment creditor in the form of a lien on the judgment debtor's property." *Aspen Indus., Inc. v. Marine Midland Bank*, 421 N.E.2d 808, 810 (N.Y. 1981); *see* Siegel, N.Y. Prac. § 492 (6th ed.) ("The restraining notice . . . does not give priority under the CPLR."). The function of the notice is "to prohibit the judgment debtor from disposing of assets" or "to maintain the status quo while the judgment creditor seeks a delivery, turnover, or receivership order." *In re Wythe Berry Fee Owner LLC*, 662 B.R. 36, 47 (Bankr. S.D.N.Y. 2024) (quoting *Plaza Hotel Assoc. v. Wellington Assocs.*, 378 N.Y.S.2d 859, 863 (N.Y. Sup. Ct. 1975)).

Plaintiffs move to vacate the restraining order pursuant to C.P.L.R. 5240. Dkt. No. 36. Section 5240 "gives the Court authority to modify a restraining notice, including one issued by the attorney for the judgment creditor." *KLS Diversified Master Fund*, 2022 WL 220058, at *4. It grants a court "broad discretionary power to control and regulate the enforcement of a money

10

judgment," crafting "flexible and equitable responses to claims that arise with respect to enforcement of valid money judgments." *Plymouth*, 183 N.E.3d at 1190 (quoting *Guardian Loan Co. v. Early*, 392 N.E.2d 1240, 1242 (1979)); *see Paz v. Long Island R.R.*, 661 N.Y.S.2d 20, 22 (2d Dep't 1997) ("CPLR 5240 is an omnibus section empowering the court to exercise broad powers over the use of enforcement procedures.").

Arena argues that the Court should use that power to vacate the restraining notice because it "violat[es] the rights of priority lienholders." Dkt. No. 48 at 2. Arena has produced evidence that it perfected its security interest in PTGi's accounts on March 1, 2024. Dkt. No. 37-2. Judgment was not entered in this case until April 23, 2024, and Acmetel has not yet sought execution or an enforcement order upon PTGi's accounts. Dkt. No. 33; *see In re Pandeff*, 201 B.R. 865, 873–74 (Bankr. S.D.N.Y. 1996) (noting that "a judgment is not a lien against property of the judgment debtor" and a judgment creditor's priority is tied to the acquisition of an execution or enforcement order); *Marine Midland Bank*, 421 N.E.2d at 810 ("[S]ervice of a CPLR 5222 restraining notice confers no priority."). Because a perfected security interest affords the creditor a superior claim to the property over a subsequent-arising judgment, Arena appears to have a superior claim to the PTGi accounts. *See Berkowitz v. Chavo Int'l, Inc.*, 542 N.E.2d 1086, 1089 (N.Y. 1989); *Liberty Mut. Ins. Co. v. Leroy Holding Co.*, 226 B.R. 746, 754 (N.D.N.Y. 1998) ("A perfected security interest thus remains superior to a judgment obtained against the debtor . . . ."); *cf. World Glob. Cap., LLC v. Sahara Rest. Corp.*, 194 N.Y.S.3d 261, 263 (2d Dep't 2023) (noting that if the security interest is not perfected until after the judgment lien, the judgment lien has priority); N.Y. U.C.C. § 9-317(a)(2).

This is a proper basis to vacate the restraining notice. The purpose of the restraining notice is to assist Acmetel in enforcing its judgment. However, Acmetel may only enforce the

judgment against property that "could be assigned or transferred." N.Y. C.P.L.R. 5201(b). "A party seeking to enforce a judgment 'stand[s] in the shoes of the judgment debtor in relation to any debt owed him or a property interest he may own.'" *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("Pertamina")*, 313 F.3d 70, 83 (2d Cir. 2002) (quoting *Bass v. Bass*, 528 N.Y.S.2d 558, 561 (1st Dep't 1988)). If PTGi cannot turn over the money in the accounts to Acmetel in satisfaction of the judgment because another party has a pre-existing right to the money, the accounts are not reachable by Acmetel under Article 52. The restraining notice would not assist Acmetel in collecting on the judgment because the assets are not available to pay on the judgment, and the notice prejudices Arena by restricting its lawful interest in the accounts for no purpose.

In *Berkowitz v. Chavo International*, the New York Court of Appeals confronted a case in which the holder of a security interest, Talcott, moved to vacate a restraining notice and execution by the judgment creditor, Berkowitz. 542 N.E.2d at 1089. The Court of Appeals held that the security interest was not perfected because Talcott did not possess the collateral, but stated that "[i]t is not open to doubt that if possession were not required, then Talcott's security interest would prevail over the judgment lien of Berkowitz." *Id.*; *see also Chrysler Credit Corp. v. Simchuk,* 685 N.Y.S.2d 236, 237 (1st Dep't 1999) (sale of vehicle to satisfy a judgment was improper because secured creditor "had a superior interest in the subject vehicle"); *Bd. of Managers of the Horizon Condo. v. Glick Dev. Affiliates*, 714 N.Y.S.2d 68, 69 (1st Dep't 2000). This case is nearly identical, except that the security interest was perfected. This justifies vacating the restraining notice, because the accounts cannot be used to satisfy the judgment. *See CIMC Raffles Offshore (Singapore) Ltd. v. Schahin Holding S.A.*, 942 F. Supp. 2d 425, 429–30

12

(S.D.N.Y. 2013) (vacating restraints on accounts in which senior lenders had perfected security interests, because the debtor cannot "assign or transfer" funds in those accounts).

Acmetel argues that vacating the restraining notice would be premature absent a full adjudication of creditor priority in a separate proceeding. Dkt. No. 47 at 1. It suggests that recognition of Acmetel's status as the first priority lien is "more appropriately requested through a separate proceeding under CPLR 5239," which allows "any interested person" to commence a special proceeding against a judgment creditor to "determine rights in the property or debt." *Id.* at 5–6. According to Acmetel, C.P.L.R. 5240 should be used "strictly to aid a party inequitably burdened by the use of enforcement procedures," not to determine the priority of creditors. *Id.* at 4 (quoting *Midlantic Nat. Bank/N. v. Reif*, 732 F. Supp. 354, 356–57 (E.D.N.Y. 1990)). Acmetel further states that it "believes that it will be able to demonstrate that Arena's alleged priory interest should be subject to recharacterization or subordination" based on certain facts set out in a declaration of counsel. Dkt. No. 47 at 10–11; *see* Dkt. No. 46. The force of Acmetel's argument is that the restraining order should stay in place "to preserve the status quo" until disputed issues around the priority of various creditors in the accounts can be fully adjudicated. Dkt. No. 47 at 5 (quoting *Interpool Ltd. v. Patterson*, 1995 WL 105284, at *1 (S.D.N.Y. Mar. 13, 1995)).

Acmetel's arguments do not provide a basis to sustain the restraining notice. Initially, Acmetel mischaracterizes the nature of the relief sought here. Arena does not seek a declaration of its creditor priority. Arena seeks to have PNC Bank relieved from the effect of the restraining notice, freeing the accounts from the restraints placed on them by this Court. Dkt. No. 36. Although Arena's argument for vacatur is based on its showing of creditor priority, the relief sought is akin to the lifting of a preliminary injunction or temporary restraining order, which

does not finally determine the merits of the underlying issue. *Cf. Plaza Hotel*, 378 N.Y. at 863 (describing the restraining notice as "a species of preliminary injunction"). The vacatur of a restraining notice is properly sought via C.P.L.R. 5240. *See, e.g., Distressed Holdings, LLC v. Ehrler*, 976 N.Y.S.2d 517, 524 (2d Dep't 2013); *Plymouth*, 183 N.E.3d at 1190.[4]

Moreover, Acmetel provides insufficient grounds to believe the money in the accounts may be used to satisfy the judgment to leave the restraining notice in place pending a future determination of creditor priority. The restraining notices were properly issued, because Acmetel could make a prima facie showing that the money in the accounts could be "assigned or transferred" to satisfy the judgment. *See United States v. Ceparano*, 2009 WL 8690129, at *4 (E.D.N.Y. May 13, 2009); *Berkshire Bank v. Tedeschi*, 2016 WL 1029526, at *3 (N.D.N.Y. Mar. 15, 2016). "When a party holds funds in a bank account . . . the presumption of ownership follows," so Acmetel could properly assume that the funds in the account belonged to PTGi. *Pertamina*, 313 F.3d at 86. However, "this presumption may be rebutted by evidence that the [another party] actually controlled the disputed funds." *Id.* Arena has provided such evidence. Dkt. No. 37-2. Therefore the premise on which the notice was issued no longer holds. *Cf. Int'l*

---

[4] Given that the New York Court of Appeals has emphasized the ability of courts to "us[e] their equitable power under this provision in myriad ways," *Plymouth*, 183 N.E.3d at 1190, a court is not barred from using its power under C.P.L.R. 5240 merely because doing so would require consideration of certain matters which Arena could also have sought to adjudicate in a proceeding under C.P.L.R. 5239. Moreover, even if Arena brought its motion under the incorrect provision of the C.P.L.R., this would be unlikely to affect the Court's ability to grant relief. C.P.L.R. 103(c) states that "a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form," and allows for flexible conversion of actions between motions and special proceedings. C.P.L.R. 103 (c). This provision has been applied in the context of judgment enforcement proceedings under article 52. *See Jackson v. Bank of Am., N.A.*, 53 N.Y.S.3d 71, 74–75 (2d Dep't 2017) (converting statutory action into special proceeding "pursuant to CPLR 5239 and 5240"); *World Glob. Cap., LLC v. Sahara Rest. Corp.*, 194 N.Y.S.3d 261, 263 (2d Dep't 2023) (converting motion for preliminary injunction into a special proceeding pursuant to C.P.L.R. 5239).

*Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501–02 (S.D.N.Y. 2006) ("An injunction should be modified . . . when the changed circumstances demonstrate that 'continuance of the injunction is no longer justified and/or [ ] will work oppressively against the enjoined parties.'" (quoting *Am. Optical Co. v. Rayex Corp.*, 291 F.Supp. 502, 510 (S.D.N.Y.1967))).

Acmetel attempts to rebut Arena's evidence that the funds are not available to satisfy the judgment by making arguments that Arena's interest should be recharacterized or subordinated to Acmetel's. Dkt. No. 48 at 9–10; *see* Dkt. No. 46. If Acmetel were able to make out a prima facie case for subordination of Arena's interest to its own, this might provide an alternative ground to sustain the notice. *Ceparano*, 2009 WL 8690129, at *4; *Tedeschi*, 2016 WL 1029526, at *3. However, Acmetel's allegations are not sufficient to make out such a case.

Equitable subordination, a doctrine generally applied in bankruptcy, requires that "(i) [t]he claimant must have engaged in some type of inequitable conduct; (ii) [t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; [and] (iii) [e]quitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act." *In re CIL Ltd.*, 2024 WL 1693626, at *69 (Bankr. S.D.N.Y. Apr. 18, 2024) (quoting *Benjamin v. Diamond (In re Mobile Steel Corp.)*, 563 F.2d 692, 699–700 (5th Cir. 1977)). Equitable subordination is generally not justified when the creditor "dealt at arm's length with the debtor." *In re 80 Nassau Assocs.*, 169 B.R. 832, 838 (Bankr. S.D.N.Y. 1994) (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1356 (7th Cir.1990)).

Even assuming that the same doctrine applies to judgment enforcement proceedings under New York law, Acmetel's allegations of inequitable conduct by Arena are conclusory and

15

unpersuasive.  Acmetel does not dispute that Arena had a valid security interest in all of PTGi's assets pursuant to an agreement of December 17, 2021, and there is no allegation that the security interest is invalid or the result of self-dealing.  Dkt. No. 37 ¶ 4; *see* Dkt. No. 46 ¶ 18 (stating only that Arena had a significant ownership interest in PTGi's parent "[b]y the second half of 2022").  Dkt. No. 37 ¶¶ 4, 6.  PTGi then entered into an agreement with Acmetel in February 2023, and paid invoices under that agreement between March 2023 and October 2023.  Dkt. No. 21 ¶¶ 6–11.  There is also no allegation that this agreement was invalid or not negotiated at arm's length.  The purported misconduct is that after PTGi paid the first seven months of invoices, Arena, which "effectively controlled" PTGi, "directed it to accept new value," i.e. to stay in its contract with Acmetel, despite knowing PTGi would not be able to pay subsequent invoices.  Dkt. No. 46 ¶ 20.

Acmetel's allegations are entirely conclusory, as Acmetel provides no evidence or specific facts on which to base a finding that Arena "directed [PTGi] to accept new value" "with no intention of payment," or even that Arena "effectively controlled" PTGi at the relevant time.  Dkt. No. 46 ¶¶ 20; *see Hillwick Inc. v. Advanced Ready Mix Supply Corp.*, 2017 WL 4694865, at *6 (N.Y. Sup. Ct. May 15, 2017) (vacating restraining order when Plaintiff's assertions that third party was an alter ego of the debtor were "speculative and conclusory"); *Market Meats, Inc. v. Butchery Nyc Inc.*, 2015 WL 725417, at *2 (N.Y. Sup. Ct. Jan. 16, 2015) (same). [5]  Moreover,

---

[5] Acmetel asserts that "associates" of Arena generally "set up and operated Charge in a fraudulent manner."  Dkt. No. 47 at 10.  Dkt. No. 46.  It relies on evidence that as of January 2024, PTGi's counsel advised Acmetel's counsel that Arena's approval would be necessary to any settlement, *id.* ¶ 5; that several individuals in some way associated with Charge or Arena were charged by the SEC, *id.* ¶¶ 7–9; that one of these individuals, the chairman of Charge before mid-2021, was paid finders' fees for bringing transactions to Arena and was also paid millions of dollars in consulting fees by Charge between December 2020 and February 2022, *id.* ¶¶ 9, 11, 13–17; that Arena obtained a "significant" ownership interest in Charge by the second half of 2022, *id.* ¶ 18;

16

even if true, the fact that Arena caused PTGi to stay in a contract that it could not pay is not the type of conduct that justifies the "drastic and unusual remedy" of subordinating a valid and perfected security interest to a later-arising judgment. *In re Enron Corp.*, 379 B.R. 425, 443 (S.D.N.Y. 2007); *cf. In re Winstar Commc'ns, Inc*., 554 F.3d 382, 412–13 (3d Cir. 2009) (creditor "used threats of nonpayment" to force debtor to purchase unneeded equipment and purposefully delayed refinancing notice to induce other creditors to provide funds to debtor). PTGi taking on contract obligations it could not fulfill is garden-variety breach of contract. That Arena took over PTGi while the contract was running, and failed to terminate the contract, does not transform this into conduct justifying equitable relief. Holding that a secured party which takes over an interest in a debtor loses its priority as soon as the debtor breaches a contract would subvert the entire priority scheme.

Given that Arena has produced evidence of a prior perfected security interest in the PTGi accounts, and Acmetel has not effectively contested this evidence, there is insufficient cause to sustain a restraint on the accounts. The restraining order should be vacated.

## III.   Intervention Under Rule 24

Arena additionally moves to intervene, Dkt. No. 36, and Acmetel opposes, Dkt. No. 47 at 7–8. However, as noted by Arena on reply, C.P.L.R. 5240 allows the court to modify the use of an enforcement procedure "on its own initiative or on the motion of any interested person." N.Y. C.P.L.R. 5240. Because a nonparty may move to vacate a restraining order or a court may do so

---

that Arena made a public statement in July 2023 stating that Charge could drive "much needed expansion for electric vehicle charging infrastructure, *id*. ¶ 18; and that Arena knew Charge at that time derived most of its revenue from its subsidiary PTGi, not electric vehicle charging, *id*. ¶ 19. Acmetel does not explain why general associations between different individuals at Charge and Arena, or any misrepresentation of the strength of Charge's electric vehicle business, justify giving PTGi's debt to Acmetel priority over Arena's security interest. Acmetel does not provide specific facts that are material to a showing of inequitable conduct related to its loan to PTGi or Arena's security interest in the PTGi accounts.

on its own initiative, it is not clear that Arena need intervene to achieve its desired relief. *See Paris v. (1) Dep't of Nat'l Store Branch (1) Vietnam*, 2000 WL 777904, at *3 (S.D.N.Y. June 15, 2000) (vacating restraining notice on motion of a third party, without intervention); *LNC Invs., Inc. v. Republic of Nicaragua*, 115 F. Supp. 2d 358 (S.D.N.Y. 2000) (same), *aff'd sub nom. LNC Invs., Inc. v. Banco Cent. De Nicaragua*, 228 F.3d 423 (2d Cir. 2000).

Nevertheless, the Court grants Arena's motion to intervene. A person claiming an interest in the property restrained pursuant to CPLR 5222(b) may intervene in the proceeding pursuant to which the restraint was issued for the purpose of protecting its property interest. *See All. Bond Fund*, 190 F.3d at 21; *Neshewat v. Salem*, 365 F. Supp. 2d 508, 524 (S.D.N.Y. 2005), *aff'd*, 194 F. App'x 24 (2d Cir. 2006) ("[I]f there are other claimants of the debt or the property, or other interests in it, these other claimants are permitted to intervene."); *cf.* Fed. R. Civ. P. 24(a)(2) ("[T]he court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action."). Arena has provided evidence that it has a first-perfected security interest in PTGi's accounts which are the subject of the restraining notice. Dkt. No. 37-2. Because of the restraining order, PNC will not release the accounts to Arena despite its purported first priority security interest. Dkt. No. 37 ¶¶ 14–16; *see Marine Midland Bank*, 421 N.E.2d at 811 ("[V]iolation of the restraining notice by the party served is punishable by contempt."). Only the Court has the power to modify the restraining notice. *CSX Transportation*, 879 F.3d at 470–71. Therefore, intervention in this proceeding is necessary for Arena to vindicate its security interest in the accounts. This justifies permitting intervention.[6]

---

[6] Plaintiff argues that the motion was not timely and Arena has no interest in the action. Dkt. No. 47 at 8–9. These arguments rely on the erroneous premise that Arena is seeking to intervene in the underlying contract action. Arena was not a party to the contract and had no apparent reason to intervene in that action. Arena's only reason for intervention is "for the limited purpose" of

IV.     **Attorney's Fees**

Arena argues that it should be awarded attorney's fees because Acmetel's refusal to release the restraining notice was frivolous. Dkt. No. 48 at 6–7. "Under its inherent powers to supervise and control its own proceedings, a district court has the authority to award attorney's fees to the prevailing party when the losing party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Eisemann v. Greene*, 204 F.3d 393, 395–96 (2d Cir. 2000); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). The Court must exercise that authority sparingly. *Id.* at 50. "To ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims," the bar for such a sanction is high. *Eisemann*, 204 F.3d at 396 (quoting *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir.1986)). Ordinarily, it requires evidence that the offending party's claims were "entirely without color" and "were brought in bad faith." *Id.* Acmetel's refusal to release the restraining notice was colorable and not clearly in bad faith. The motion for attorney's fees is denied.

## CONCLUSION

The motion to intervene and vacate the subpoena with restraining notice is GRANTED IN PART and DENIED IN PART. The motion to intervene is granted and the Information

---

vacating the restraining order and ordering PNC to release and return the funds in the PTGi Accounts. Dkt. No. 37 at 7. Arena's motion is timely as to that purpose, because it was made about a month after PNC refused to release the funds. Dkt. No. 37 ¶¶ 15. Arena could not have made the motion during the underlying action, because the funds were not restricted at that time. Similarly, Arena has an interest in the release of funds to which it purportedly has a claim, regardless of whether it had an interest in the underlying contract dispute.

19

Subpoena with Restraining Notice and Subpoena Duces Tecum is vacated. The motion for attorney's fees is denied.[7]

Acmetel's cross-motion for an order requiring Arena to correct its Rule 7.1(a) Disclosure Statement is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 36 and 45.

SO ORDERED.

Dated: October 10, 2024
New York, New York

LEWIS J. LIMAN
United States District Judge

---

[7] The Court additionally declines to issue an order "directing PNC to release the full amount of the funds that were removed from the PTGi accounts," as requested by Arena. Dkt. No. 36. PNC is not a party to this action, and the Court is not adjudicating the relationship between PNC and the holders of security interests in PNC accounts. Pursuant to this order, the PTGi accounts and funds in them or removed from them are no longer under any restraint from this Court.